

March 11, 2020

**VIA ECF**
Hon. Christian F. Hummel
U.S. Magistrate Judge
U.S. District Court, Northern District of New York
James T. Foley Courthouse
445 Broadway, Room 441
Albany, NY 12207

      Re:    *AngioDynamics, Inc. v. C.R. Bard, Inc., et al.,*
             No. 17-cv-00598 (BKS/CFH)

Dear Judge Hummel:

    Pursuant to the Court's text order (Dkt. No. 85), we write in response to Bard's March 3, 2020 letter to the Court (Dkt. No. 83) regarding AngioDynamics' Rule 26(a)(1) Supplemental Initial Disclosures.

    This is Bard's third attempt at seeking additional depositions from this Court for the purpose of deposing third party hospitals. The Court has already granted Bard five additional depositions and advised the parties that "***any further request for additional depositions will not be considered by the Court***." (Dkt. No. 78 (emphasis added).) Yet that is exactly what Bard seeks here—*more* depositions to depose third party hospitals. In addition, coming at the close of discovery, additional depositions would have serious ramifications for the schedule in this case. AngioDynamics is committed to the schedule set by this Court, including a likely trial date in September (*see* Exh. A, Sept. 11, 2019 Hearing Tr., Dkt. No. 64, at 2-3), and Bard presents no good reason to delay the case schedule now to depose representatives of hospitals that were disclosed in discovery months ago.

    Bard first sought additional depositions from this Court in September 2019. On September 11, 2019, after AngioDynamics had supplemented its interrogatory responses to list the names of hospitals that sought to purchase Bard's tying product separately from its tied product, Bard's counsel appeared before the Court to seek a 50% increase in depositions. This discovery was necessary, Bard's counsel argued, because "[t]here are these **25 hospitals they are now telling us that we can seek discovery of**. Well, it's going to be very difficult to talk to any, let alone several of them, if we only have 10 depositions."



(Exh. A at 20 (emphasis added).)  The Court granted Bard an additional three depositions. (*Id*. at 24.)

After Bard supplemented its interrogatory responses in October 2019 and added still more hospitals to the list of institutions that sought to buy Bard's tying product separate from its tied product, Bard's counsel again appeared before the Court to argue that it needed yet more depositions: "They've ***identified 39 hospitals who they say would have bought their PICCs or they've lost sales from*** . . . .  [U]sually in an antitrust case, you have sometimes dozens of depositions.  Here, we understand here that we're going to have to make decisions and may only get to two or three of them and may have to forego one of the Angio people, whatever it is, but we should at least have the opportunity to get a handful of them." (Exh. B, Nov. 20, 2019 Hearing Tr., Dkt. No. 79, at 10 (emphasis added).)  The Court granted Bard two additional depositions.  However, as noted above, the Court advised the parties that it would not consider any further requests for additional depositions.  (Dkt. No. 78.)

Under the guise of a challenge to AngioDynamics' Supplemental Initial Disclosures, Bard now makes a third attempt to obtain additional depositions, despite the Court's admonition to the parties that no further requests would be considered.  On February 12, 2020, AngioDynamics supplemented its initial disclosures to conform them to information learned over the course of discovery.  This supplementation included adding the names of hospitals that AngioDynamics had identified in its July 19, 2019 Supplemental Response to Defendant's First Interrogatories as institutions that asked Bard to sell its tying product separate from its tied product.  AngioDynamics also added the names of hospitals that Bard had identified in its October 18, 2019 Supplemental Responses to AngioDynamics' First Interrogatories.  In short, the amended initial disclosures merely memorialized what the parties had disclosed to each other months previously.  Indeed, it was Bard's knowledge of these very same hospitals that led it to ask the Court in September and again in November to conduct additional depositions.  (*See* Exh. A at 20; Exh. B at 10.)

Thus, Bard had ample notice of these hospitals and sought and received permission to conduct additional depositions so that it could gather evidence from these hospitals.  Now—four months later—***Bard has failed to depose a single one of these institutions***.  Instead, Bard conducted two depositions of witnesses from the Cleveland Clinic, a hospital identified in Plaintiff's Complaint as the only institution to which Bard ever sold its tying product separately from its tied product.  Rather than live with its choices, Bard now seeks relief from the Court that would prejudice AngioDynamics and cause needless delay.

Bard suggests that it did not know which individuals at the hospitals to depose and challenges AngioDynamics' Supplemental Initial Disclosures on the ground that AngioDynamics did not identify a specific individual at each of the hospitals.  This



argument is nonsensical; corporate representative depositions were designed for exactly this scenario. As described in greater detail in AngioDynamics' meet and confer correspondence (*see* Dkt. No. 84-2), it is proper for a party to identify non-party corporate entities in its initial disclosures rather than specific individuals that will testify on behalf of those entities. *See, e.g.*, *Maryland Cas. Co. v. Malone*, 90 F. Supp. 3d 1351, 1360 (N.D. Ga. 2015) (finding "Defendants were on notice of the potential for Ms. Hawkin's testimony," although "not named individually," where plaintiff's initial disclosures provided that "it would rely on . . . a corporate representative of Maryland Casualty to establish facts" on a specific topic); *Moore v. Computer Assocs. Int'l, Inc.*, 653 F. Supp. 2d 955, 959 (D. Ariz. 2009), *on reconsideration*, No. 07-CV-01483, 2010 WL 11515202 (D. Ariz. Sept. 7, 2010) (interpreting Rule 26(a)(1)(A)(i) as "limited to individuals and exclusive of corporate entities, an exclusion which would necessarily apply to individuals who testify on behalf of corporate entities") (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003)); *Lodestar Anstalt v. Route 66 Junkyard Brewery LLC*, No. 17-CV-00062, 2019 WL 231755, at *5 n.3 (D.N.M. Jan. 16, 2019) (finding that "Plaintiff had adequate notice that Mr. Lente would be a witness" where "Defendants identified an Admiral corporate representative in their initial disclosures (although they did not identify Mr. Lente specifically)"); *Medpace, Inc. v. Biothera, Inc.*, No. 12-CV-179, 2013 WL 6158181, at *2 (S.D. Ohio Nov. 25, 2013) (rejecting the argument that "the inclusion of five corporate entities in Defendants' supplemental disclosures violated Rule 26, because the rule mandates the naming of *individuals*") (emphasis in original) (citing *Moore*, 653 F. Supp. 2d at 959).[1]

---

[1] Bard's cited cases are not relevant to this issue, as they do not concern the disclosure of non-party corporate entities. *See Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 388 n.8 (D.N.J. 2006) (concerning defendants' boilerplate disclosures regarding "all persons named in any document produced by any party, all persons named in any pleading or depositions, and such other individuals as further investigation and discovery may reveal"); *Sender v. Mann*, 225 F.R.D. 645, 658 (D. Colo. 2004) (concerning a party's disclosure of hundreds of individuals by name without "correlat[ing] initial disclosures to specific claims or defenses of particular adverse parties"); *Chinn v. Elmwood Franklin School*, 15-CV-00938, at *2 (W.D.N.Y. Nov. 1, 2018) (concerning a pro se litigant's identification of "categories such as 'current and former administrators . . . teachers . . . employees . . . students . . . Trustees . . . [and] Board members,' without disclosing the subjects of the information they may possess"). *See also Kullman v. New York*, 2009 WL 1562840, at *8 (N.D.N.Y. May 20, 2009) (finding that supplementation was necessary because under the circumstances of the case it was insufficient that an individual's name had been mentioned in discovery).

Case 1:17-cv-00598-BKS-CFH   Document 86   Filed 03/11/20   Page 4 of 5



Moreover, although AngioDynamics issued its supplemental initial disclosures as a convenience to the parties, it was not required to do so. The Federal Rules do not require a party to make supplemental disclosures where the other party already has notice of the potential witnesses, as Bard was here on the basis of its and AngioDynamics' and Bard's own interrogatory responses. *See, e.g., BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 323 (S.D.N.Y. 2013) ("[T]he obligation to supplement a Rule 26 initial disclosure is only necessary when the omitted or after-acquired information has not otherwise been made known to the other parties during the discovery process. Thus, there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery . . . . With regard to the witnesses themselves, Defendants provide compelling evidence that, even if these witnesses' names were not in the initial disclosures, Plaintiff had 'had ample notice of the witnesses and categories of documents' but 'elected not to pursue discovery.'") (quotations omitted); *White v. City of Middletown*, 45 F. Supp. 3d 195, 209 (D. Conn. 2014) ("[T]here is no need as a matter of form to submit a supplemental disclosure to include information *already revealed by a witness in a deposition or otherwise through formal discovery* . . . . Defendant should have anticipated that Plaintiff would have relied on information *it provided to Plaintiff* in discovery.") (emphasis in original).

In addition, although beyond the scope of the present issue, Plaintiff disputes Bard's claim that "[t]o actually *prove* at trial that Bard's alleged tie in fact coerced hospitals that preferred AngioDynamics' PICCs to purchase Bard's . . . AngioDynamics will need to call hospital witnesses." (Dkt. No. 83 at 3 (emphasis in original)). The Court has already found that "[a]n 'unremitting policy of tie-in, if accompanied by sufficient market power in the tying product to appreciably restrain competition in the market for the tied product constitutes the requisite coercion . . . given foreclosure of a not insubstantial volume of interstate commerce.'" (MTD Order, Dkt. No. 23, at 13 (quoting *Hill v. A-T-O, Inc.*, 535 F.2d 1349, 1355 (2d Cir. 1976)). *See also Park v. Thomson Corp.*, No. 05-CV-2931, 2007 WL 119461, at *4 (S.D.N.Y. Jan. 11, 2007) ("When a policy of conditioned sales is demonstrated, proof of coercion on an individual basis is unnecessary.")). Here, it is undisputed that—with the sole exception of Cleveland Clinic—Bard has refused to separately sell its stylet. Bard's own witnesses admit as much and thus, despite Bard's argument to the contrary, hearsay is not an issue and there is no pressing need for yet another opportunity to depose third party hospitals.

In short, there is no doubt that Bard was aware of the hospitals at issue and twice sought additional discovery so that it could depose these hospitals. Bard's feigned surprise at the close of discovery is thus nothing more than an attempt to again expand discovery and delay the course of litigation, or cause prejudice to AngioDynamics by preventing it from calling representatives from these hospitals at trial.

4



     As AngioDynamics has previously proposed to Bard, it believes the most efficient and sensible path forward for both parties is that the parties mutually reserve the right to take pre-trial depositions of any trial witnesses who have not yet been deposed or who were not listed on the parties' initial disclosures. This is not only efficient, it also prevents prejudice to either party. There will be no "trial by ambush" as Bard suggests in hyperbole. Dkt. No. 83 at 3. Rather the parties will disclose their trial witness lists in due course and conduct limited, pre-trial discovery as necessary. Indeed, the parties have already reached this agreement with respect to a handful of specific party witnesses.

     For all the foregoing reasons, we oppose Bard's request to take addition depositions of third party hospitals after the current discovery deadline or to preclude AngioDynamics from calling hospital witnesses at trial.

                                                  Respectfully submitted,

                                                  */s/ Philip J. Iovieno*
                                                  Philip J. Iovieno