**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANGIODYNAMICS, INC.,

                               Plaintiff,                    1:17-cv-00598 (BKS/CFH)

v.

C.R. BARD, INC. and BARD ACCESS SYSTEMS, INC.,

                               Defendants.

---

**Appearances:**

*For Plaintiff:*

Philip J. Iovieno
Adam R. Shaw
Anne M. Nardacci
Mark A. Singer
Boies Schiller Flexner LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207

Nicholas A. Gravante, Jr.
Boies Schiller Flexner LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022

*For Defendants:*

Andrew J. Frackman
Edward N. Moss
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036

James P. Nonkes
Philip G. Spellane
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

*For Non-Party Teleflex Incorporated:*

Thomas B. Sullivan

Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019

Leslie E. John
Thomas J. Gallagher IV
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff AngioDynamics, Inc. ("AngioDynamics") brings this antitrust action against Defendants C.R. Bard, Inc. and Bard Access Systems, Inc. (collectively, "Bard"), asserting a claim of illegal tying in violation of section 1 of the Sherman Act (codified at 15 U.S.C. § 1) under "per se" and "rule of reason" theories of liability. (*See generally* Dkt. No. 1). AngioDynamics seeks treble damages, a permanent injunction, and declaratory relief. (*See id.* at 29). Presently before the Court are the parties' joint motion to file certain documents under seal in connection with their cross-motions for summary judgment and Bard's motion in limine to exclude the testimony of AngioDynamics' causation and damages expert, (Dkt. No. 156), as well as non-party Teleflex Incorporated's ("Teleflex") uncontested application to maintain its confidential information under seal in connection with those motions (Dkt. No. 155).[1] For the reasons that follow, the motions are granted in part and denied in part.

---

[1] The parties initially filed consent motions that included broader sealing requests. (Dkt. Nos. 130, 131). The Court denied those motions without prejudice to renewal, finding that the motions "fail[ed] to show how sealing is warranted under *Lugosch v. Pyramid Co. of Onondaga County*, 435 F.3d 110 (2d Cir. 2006)," that "[t]he fact that documents are governed by a protective order in civil discovery does not satisfy a party's burden under *Lugosch*," and that "[t]o the extent sealing is warranted, any sealing must be narrowly tailored to serve the higher values that support limiting public access under the First Amendment and common law right of public access to court documents." (Dkt. No. 137). The parties' and Teleflex's renewed motions, now before the Court, include more narrowly tailored sealing requests than those proposed in their original consent motions. By order of this Court, (Dkt. No. 158), the parties have filed the proposed public versions of all their relevant filings on the public docket, so that the public versions of these filings

## II.    LEGAL STANDARD

"The notion that the public should have access to the proceedings and documents of

courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238-

39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said

to predate even the Constitution itself." *Id*. at 239. The First Amendment to the U.S. Constitution

"also protects the public's right to have access to judicial documents." *Id*. A party seeking to seal

documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa*

*v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

### 1.    Common Law Right of Access

The Second Circuit has articulated a three-step process for determining whether

documents should be sealed in light of the common law right of access. "Before any such

common law right can attach . . . a court must first conclude that the documents at issue are

indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir.

2006). To constitute a judicial document, "the item filed must be relevant to the performance of

the judicial function and useful in the judicial process." *United States v. Amodeo* (*Amodeo I*), 44

F.3d 141, 145 (2d Cir. 1995).

Second, after determining that the documents are judicial documents and that the

"common law presumption of access attaches," the court must "determine the weight of that

presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit,

> the weight to be given the presumption of access must be governed
> by the role of the material at issue in the exercise of Article III
> judicial power and the resultant value of such information to those
> monitoring the federal courts. Generally, the information will fall
> somewhere on a continuum from matters that directly affect an

---

are now only under seal to the extent proposed by the parties and Teleflex in their renewed motions. (Dkt. Nos. 132, 133, 134, 136, 138, 143, 144, 145, 146, 147, 152, 153, 154).

adjudication to matters that come within a court's purview solely to
insure their irrelevance.

*United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995). When a document

plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the

heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the

weight of the presumption declines." *Id.* When "documents are usually filed with the court and

are generally available, the weight of the presumption is stronger than where filing with the court

is unusual or is generally under seal." *Id.* at 1050.

Third, the court must balance any "competing considerations" against the weight of the

presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are

not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy

interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050); *accord*

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

When weighing privacy interests, courts should consider "the degree to which the subject matter

is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should

also assess the "nature and degree of injury," paying heed to "the sensitivity of the information

and the subject" but also to "how the person seeking access intends to use the information." *Id.* at

1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be

indulged in the name of monitoring the courts").

### 2.     First Amendment Right of Access

The First Amendment right of access stems from the qualified right of the public and the

press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435

F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once

a court concludes that there is a qualified First Amendment right of access to the judicial

documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, and the attorney-client privilege, *Lugosch*, 435 F.3d at 125.

## III.  DISCUSSION

The significant majority of the documents the parties and Teleflex seek to file wholly or partially under seal are documents "submitted to the court as supporting material in connection with [their] motion[s] for summary judgment." *Lugosch*, 435 F.3d at 123. "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Id.* at 121. The Second Circuit has instructed that the weight of the presumption of public access given to summary judgment filings "is of the highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons.*'" *Id.* at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).[2] The remaining documents, submitted as supporting material in connection with Bard's motion in limine, are judicial documents that carry a "somewhat lower" presumption

---

[2] The parties "do not dispute that the documents are 'judicial documents,'" but contend that "the 'presumption of access is less' with respect to certain of the documents because the 'confidential information does not go to the heart of the judicial process' and is 'not central to the Court's rulings,'" though they do not specifically identify which "certain . . . documents" this argument applies to. (Dkt. No. 156-1, at 3-4 (quoting *Mullinix v. Mount Sinai Sch. Of Med.*, 2014 WL 3687217, at *21, 2014 U.S. Dist. LEXIS 101667, at *60 (S.D.N.Y. July 24, 2014))). However, the Second Circuit has "expressly rejected the proposition that 'different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving [a] motion [for summary judgment].'" *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) (quoting *Lugosch*, 435 F.3d at 123).

of public access, though the Court "must still articulate specific and substantial reasons for sealing such material." *Brown*, 929 F.3d at 50.[3]

Having concluded that both the common law and First Amendment provide a right of access to the documents, the Court must consider whether countervailing factors outweigh the presumption of access and whether continued sealing is justified under "the more stringent First Amendment framework." *Lugosch*, 435 F.3d at 124. "Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access to the record; specific, on-the-record findings are required." *Bernstein*, 814 F.3d at 144-45 (internal quotation marks and alteration omitted).

The documents sought to be filed wholly or partially under seal are listed in the parties' joint sealing motion. (Dkt. No. 156-1, at 5-10). The parties' overall argument is that "any presumption of access is outweighed here by the competitive harm that would result to the parties from having their proprietary business information disclosed to the public," and that the information they seek to seal is "exactly the sort that courts have found appropriate to seal to avoid giving competitors' [sic] an unearned advantage." (*Id.* at 4, 10). They identify seven categories of documents that they contend should remain wholly or partially under seal: (1) documents that "contain and relate to the parties' confidential research and development plans"; (2) documents that "contain and relate to the parties' confidential pricing information"; (3) documents that "contain and relate to the parties' confidential sales and marketing strategies";

---

[3] Here, Bard's motion in limine is integral to its summary judgment motion, and almost all of the documents the parties seek to seal in connection with the motion in limine have also been submitted in some form in connection with the parties' summary judgment briefing. Arguably, then, in this particular case, it makes little sense to apply a lower presumption of public access to the documents submitted in connection with the motion in limine than to those submitted in connection with the summary judgment motions, and no party has argued for such a distinction. In any event, regardless of the weight the Court gives to the presumption of access for the documents submitted in connection with the motion in limine, its rulings throughout this decision would be the same.

(4) documents that "contain and relate to the parties' confidential market share information"; (5) "the parties' full and excerpted expert deposition transcripts," which the parties contend "should remain under seal to the extent they quote the above documents and contain confidential information that falls into all of the above categories, including Teleflex's confidential information"; (6) "the parties' full expert reports," which the parties contend "should remain fully under seal because they heavily quote the above documents and contain confidential information that falls into all of the above categories, including Teleflex's confidential information"; and (7) "portions of the parties' summary judgment briefs . . . briefs filed in connection with Bard's motion in limine . . . and the parties' statements of material facts . . . that quote the above documents and contain confidential information that falls into all of the above categories, including Teleflex's confidential information." (*Id.* at 5-10). The parties "also propose to redact certain personal identifying information" in several documents. (*Id.* at 10 n.4). The parties have not filed affidavits from individuals with personal knowledge identifying with particularity the precise reasons why the information they seek to seal would cause them competitive harm if made public.

In its separate sealing application, Teleflex contends that the following confidential information in the parties' submissions should be kept under seal: "(i) average sales prices for Teleflex's PICCs, Stylets, and Tip Location Systems; (ii) quantities of PICCs, Stylets, and Tip Location Systems sold by Teleflex; (iii) percentages of Stylets sold on a standalone basis that were used in conjunction with PICCs sold by AngioDynamics and Bard, two of Teleflex's competitors; and (iv) Teleflex's market shares for PICCs, Stylets, and Tip Location Systems." (Dkt. No. 155-1, at 4). Teleflex justifies its request by arguing that the information it seeks to seal satisfies the Second Circuit's six-factor test for the existence of a "trade secret":

> (1) The extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

(Dkt. No. 155-1, at 9 (quoting *Utica Mut. Ins. Co. v. R&Q Reins. Co.*, No. 14-cv-699, 2015 WL 13639179, at *3, 2015 U.S. Dist. LEXIS 197904, *8 (N.D.N.Y. Dec. 10, 2015)); *id.* at 9-15 (explaining why the information Teleflex seeks to seal satisfies the foregoing test)). Teleflex also argues that the information "concerns the 'privacy interests' of a third-party (Teleflex) 'who resist[s] disclosure'" and that "detailed data concerning recent product sales is 'traditionally considered private rather than public,'" while pointing out that it chose to disclose this information in response to a subpoena from AngioDynamics (rather than object to the subpoena) only after "negotiat[ing] additional protective language for information disclosed pursuant to the subpoena," and in reliance on its "strong expectation of continued confidentiality." (*Id.* at 5-8, 15-16 (citations omitted)). Teleflex submits a declaration from Cristiano Gomide, its Vice President, Global Marketing – Vascular, explaining the facts relevant to the foregoing arguments. (Dkt. No. 155-6). With one exception, (Dkt. No. 155-1, at 7), Teleflex does not identify with specificity the documents that it seeks to maintain wholly or partially under seal. However, the Court will consider Teleflex's arguments with respect to any of its confidential information in the materials that are the subject of the parties' joint sealing motion.

As a general matter, the Court agrees with the parties and Teleflex that courts commonly find that documents that contain "trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like" satisfy the sealing standard given the important privacy interests at stake. *Hypnotic Hats, Ltd. v.*

*Wintermantel Enters, LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (internal quotation marks omitted); *cf. Arar v. Ashcroft*, 585 F.3d 559, 610 (2d Cir. 2009) (listing types of matters where the presumption of openness is overcome, including those involving "trade secrets"); *In re New York Times Co.*, 577 F.3d 401, 410 n.4 (2d Cir. 2009) ("When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved."). Nonetheless, "assert[ions] in broad terms" that "do not explain why any particular document . . . is 'proprietary,' or a 'trade secret,' or why its disclosure could otherwise cause competitive harm" are "not sufficiently specific to justify sealing," though a Court may grant a motion to seal if, based on its own review of the documents at issue, it determines that sealing is justified. *Palomo v. DeMaio*, No. 15-cv-1536, 2018 WL 5113133, at *2, 2018 U.S. Dist. LEXIS 179774, at *3-4 (N.D.N.Y. Oct. 19, 2018); *see also In re SunEdison, Inc. Sec. Litig.*, No. 16-cv-7917, 2019 WL 126069, at *1-2 (S.D.N.Y. Jan. 7, 2019)[4] (rejecting the defendants' general contention that the information to be sealed was "commercially sensitive, nonpublic information," as they failed to explain "why specific documents or information are sensitive or risk harm to any person or entity," but concluding that redactions were warranted based on the court's "own review" of the documents).

With these principles in mind, the Court examines each of the documents listed in the parties' sealing motion to determine whether, in each case, the proposed redaction or sealing is justified by the parties' and Teleflex's legitimate privacy interests, and is sufficiently narrowly tailored in light of the presumption of public access the documents are afforded.

---

[4] No parallel LEXIS citation available.

A.      **Research and Development Plans**

The parties seek to file the following documents wholly or partially under seal on the grounds that they "contain and relate to the parties' confidential research and development plans": Dkt. Nos. 136-2, 136-6, 136-25, 136-31, 136-40, 138-26, 138-27, 138-51, 144-42, 138-65, 138-80, 147-1, 147-4, 147-16, 147-24, and 147-29. (Dkt. No. 156-1, at 5-6).

With respect to the following documents, the parties propose limited redactions of competitively sensitive information about the parties' proprietary product designs, product testing, overall research and development strategies, and specific past and current research and development projects, including budgets, costs, acquisition bids and expenditures, revenues, anticipated timelines, internal competitive analyses and projections: Dkt. Nos. 136-2, 136-6, 136-25, 136-31, 138-26, 138-27, 138-80, 147-1, 147-4, 147-16, 147-24, and 147-29. The Court finds that these redactions are sufficiently narrowly tailored to protect the parties' competitively sensitive research and development information. *See, e.g., Grayson v. Gen. Elec Co.*, No. 13-cv-1799, 2017 WL 923907, at *3, 2017 U.S. Dist. LEXIS 32897, at *9 (D. Conn. Mar. 7, 2017) (noting that information "related to the design" of a product is "the type of information that is generally kept confidential and outweighs the presumption of public access due to its importance to competition in the relevant field"); *id.* at *4, 2017 U.S. Dist. LEXIS 32897, at *11 (granting motion to seal "exhibits contain[ing] specific confidential information regarding product design, testing and evaluation"); *Playtex Prod., LLC v. Munchkin, Inc.*, No. 14-cv-1308, 2016 WL 1276450, at *11, 2016 U.S. Dist. LEXIS 42261, at *40-41 (S.D.N.Y. Mar. 29, 2016) (granting the redaction of statements where their disclosure would give competitors "insight into specifics as to the timing, nature, and key players involved in Playtex's product development"); *id.* at *12, 2016 U.S. Dist. LEXIS 42261, at *41 (granting motion to seal portion of briefing "which references confidential and sensitive business information, including . . . product testing").

Therefore, these documents may remain under seal to the extent currently proposed by the parties.

The parties seek to file Dkt. Nos. 136-40, 138-51 and 144-42 under seal in their entirety. These documents do appear to contain genuinely competitively sensitive research and development information, but also appears to contain information that cannot meet the *Lugosch* standard. For example, Dkt. No. 136-40 includes information about past product launches which are public knowledge, while Dkt. Nos. 138-51 and 144-42 (which are the same document) appears to include the contents of a product's Food and Drug Administration ("FDA") label. Without an explanation or affidavit more specifically addressing why public disclosure of these documents would be competitively harmful, the parties have not met their burden of proving that maintaining them under seal in their entirety is justified. Therefore, the Court denies the parties' sealing request with respect to these documents. To the extent the parties wish to renew their sealing motion with respect to these documents, they should propose more narrowly tailored redactions that satisfy the sealing standard as articulated in *Lugosch* and explain the basis for those redactions. *See, e.g., Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 18-cv-00549, 2019 WL 2918026, at *3, 2019 U.S. Dist. LEXIS 116674, at *9 (N.D.N.Y. June 18, 2019) (denying requests to wholesale seal exhibits where part of [the exhibits] might satisfy the sealing standard" but "the request for sealing is not narrowly tailored," and holding that "the parties must identify the specific parts they wish to redact and the basis for those redactions"); *id.* at *4-5, 2019 U.S. Dist. LEXIS 116674, at *11-12, 15-16 (same).

In a similar vein, with respect to Dkt. No. 138-65, the parties seek to redact in its entirety the attachment to an email which includes Bard's answers to the FDA's questions about its standalone TLS stylet. While some of the redacted information appears to be genuinely

competitively sensitive, the parties have not met their burden of proving that the *entire* attachment is so competitively sensitive as to outweigh the strong presumption of public access. *Id.*; *cf. King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-cv-5540, 2010 WL 3924689, at *8, 2010 U.S. Dist. LEXIS 102703, at *24 (E.D.N.Y. Sept. 28, 2010) ("[J]udicial precedent does not afford blanket protection against disclosure of communications with the FDA. Instead, each case turns on its particular facts, and a court will order sealing only where the party resisting disclosure has made a particularized showing of harm that would result from revealing trade secrets."). Therefore, the Court denies the parties' sealing request with respect to this document. To the extent the parties wish to renew their sealing motion with respect to this document, they should propose more narrowly tailored redactions that satisfy the sealing standard as articulated in *Lugosch* and explain the basis for those redactions. *See, e.g.*, *Rensselaer*, 2019 WL 2918026, at *3-5, 2019 U.S. Dist. LEXIS 116674, at *9, 11-12, 15-16.

### B. Pricing Information

The parties seek to file the following documents wholly or partially under seal on the grounds that they "contain and relate to the parties' confidential pricing information": Dkt. Nos. 136-37, 136-58, 138-6, 138-9, 144-35, 138-17, 138-40, 138-43, 138-44, 138-70, 138-74, 144-19, 144-24, 144-25, 147-52, and 147-53. (Dkt. No. 156-1, at 6-7).

With respect to the following documents, the parties propose limited redactions that redact only specific pricing, sales and revenue figures: Dkt. Nos. 136-37, 136-58, 138-6, 138-9, 144-35, 138-17, 138-40, 138-43, 138-44, 138-70, 138-74, 144-19, 144-24, and 144-25. The Court finds that these redactions are sufficiently narrowly tailored to protect the parties' competitively sensitive pricing, sales and revenue information. *See, e.g., Valassis Comms., Inc. v. News Corp.*, No. 17-cv-7378, 2020 WL 2190708, at *3, 2020 U.S. Dist. LEXIS 79448, at *10-11 (S.D.N.Y. May 5, 2020) (finding that "[d]isclosure of the specifics of [a party's active business

units'] pricing, costs, revenue, and profit information could result in significant harm to [the party] without providing much value in the monitoring of the federal courts," and that the party's "proposed redactions covering this information are narrowly tailored to protect these specific financial metrics"); *Grayson*, 2017 WL 923907, at *3, 2017 U.S. Dist. LEXIS 32897, at *9 (finding that disclosure of documents reflecting "the amount of [product] sold relates directly to confidential information about pricing and profit, and disclosure thereof could cause defendant competitive harm"); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (granting requests to seal and redact documents containing "highly confidential sales information, including pricing information"). Therefore, these documents may remain under seal to the extent currently proposed by the parties.

With respect to Dkt. No. 147-52, the parties propose to redact the proposed purchase price and pricing structure of several proposals and counterproposals during a past acquisition negotiation by AngioDynamics. Dkt. No. 147-53, which the parties propose to file entirely under seal, contains substantially similar information, and contains virtually no other substantive information. The Court finds that the parties' proposed redactions on Dkt. No. 147-52, and the wholesale sealing of Dkt. No. 147-53, are sufficiently narrowly tailored to protect AngioDynamics' competitively sensitive pricing information with respect to a past attempted acquisition. *Playtex Prod.,* 2016 WL 1276450, at *12, 2016 U.S. Dist. LEXIS 42261, at *41 (redacting "confidential and sensitive business information, including . . . merger discussions"). Therefore, these documents may remain under seal to the extent currently proposed by the parties.

### C.   Sales and Marketing Strategies

The parties seek to file the following documents wholly or partially under seal on the grounds that they "contain and relate to the parties' confidential sales and marketing strategies":

Dkt. Nos. 136-14, 147-47, 136-20, 147-34, 153-2, 136-33, 138-32, 138-11, 138-9, 144-35, 147-8, 147-31, 153-4, and 154-4. (Dkt. No. 156-1, at 7).

With respect to the following documents, the parties propose limited redactions of competitively sensitive information about the parties' sales and marketing strategies generally and with respect to particular customers, market share and revenue estimates, and specific threats to their businesses the parties have identified: Dkt. Nos. 138-11, 138-9, 144-35, 147-31, 153-4, and 154-4. The Court finds that these redactions are sufficiently narrowly tailored to protect the parties' competitively sensitive sales and marketing information. *See, e.g.*, *Tropical Sails Corp. v. Yext, Inc.*, No. 14-cv-7582, 2016 WL 1451548, at *4, 2016 U.S. Dist. LEXIS 49029, at *10-11 (S.D.N.Y. Apr. 12, 2016) (finding that disclosure of "documents relating to marketing and business development activities as sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests" risked a competitive injury "sufficiently serious to warrant protection"); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (finding that "material concerning the defendants' marketing strategies" contain "highly proprietary material" and therefore may remain under seal). Therefore, these documents may remain under seal to the extent currently proposed by the parties

With respect to Dkt. No. 138-32, the Court also finds that the parties' proposed redactions are sufficiently narrowly tailored to protect the parties' competitively sensitive sales and marketing information. However, the current, proposed public version of the document appears to be missing several pages; while the parties' motion states that the parties "propose to file further excerpted versions of certain exhibits with extraneous information removed," (Dkt. No. 156-1, at 2 n.1), they have not explained whether Dkt. No. 138-32 is one of those

14

documents, and the material on the missing pages appears facially relevant to the parties' motions. In connection with any renewed sealing motion, the parties should refile a complete version of this document with all proposed redactions.

Dkt Nos. 136-20, 147-34, 153-2 and 147-8, which the parties propose to file entirely under seal, do appear to contain competitively sensitive sales and marketing information. However, from a review of the documents, it is not clear to the Court that wholesale sealing of these documents, as opposed to redaction of the genuinely competitively sensitive information, is appropriate. Without an explanation or affidavit more specifically addressing why public disclosure of these documents would be competitively harmful, the parties have not met their burden of proving that maintaining them under seal in their entirety is justified. Therefore, the Court denies the parties' sealing request with respect to these documents. To the extent the parties wish to renew their sealing motion with respect to these documents, they should propose more narrowly tailored redactions that satisfy the sealing standard as articulated in *Lugosch* and explain the basis for those redactions. *See, e.g.*, *Rensselaer*, 2019 WL 2918026, at *3-5, 2019 U.S. Dist. LEXIS 116674, at *9, 11-12, 15-16.

With respect to Dkt. Nos. 136-14 and 147-47 (which are the same document), the redacted material appears to contain an analysis of general trends in the U.S. and global health care markets, rather than any specific confidential information about either party's sales or marketing strategies. Without an explanation or affidavit more specifically addressing why public disclosure of this document would be competitively harmful, the parties have not met their burden of proving that maintaining any portion of it under seal is justified. Therefore, the Court denies the parties' sealing request with respect to this document.

15

With respect to Dkt. No. 136-33, some of the redactions the parties propose appear to relate to genuinely competitively sensitive sales and marketing strategies, while other redactions do not, on their face, appear to involve any party's confidential or sensitive information. Without an explanation or affidavit more specifically addressing why public disclosure of the portions the parties seek to redact would be competitively harmful, the parties have not met their burden of proving that the redactions they propose are justified. Therefore, the Court denies the parties' sealing request with respect to this document. To the extent the parties wish to renew their sealing motion with respect to this document, they should explain with specificity why each of their proposed redactions satisfy the sealing standard as articulated in *Lugosch*.

### D.     Market Share Information

The parties seek to file the following documents wholly or partially under seal on the grounds that they "contain and relate to the parties' confidential market share information": Dkt. Nos. 136-12, 138-78, 132-4, 143-9, and 147-23. (Dkt. No. 156-1, at 7-8).

Dkt. No. 136-12, which the parties propose to file entirely under seal, is a document titled "Medtech 360 Vascular Access Devices, 2016 Market Analysis." This document is an analyst report prepared by a third party, and no party has explained whether the document is publicly available or was prepared for the exclusive, confidential use of one of the parties. Even assuming the parties consider the document itself confidential, the document appears to largely consist of general analysis of the vascular access market and particular companies' products. The document only contains high-level and generalized statements about various competitors' market positions that, on their face, the Court cannot reasonably construe as "confidential market share information." Without an explanation or affidavit more specifically addressing why public disclosure of this document would be competitively harmful, the parties have not met their

burden of proving that maintaining it under seal is justified. Therefore, the Court denies the parties' sealing request with respect to Dkt. No. 136-12.

With respect to Dkt. No. 138-78, the parties propose to redact Bard's internal market share estimates, as well as market share estimates obtained from IMS, a third party. While Bard's internal, confidential market share analysis is certainly competitively sensitive information that may be kept under seal, the parties have not explained why disclosure of the IMS data would be competitively harmful, given that (according to the document itself) the data may be "purchased by any manufacturer" and Bard was willing to "share [the IMS estimates] with customers." (Dkt. No. 138-78, at 2). Without an explanation or affidavit more specifically addressing why public disclosure of this data would be competitively harmful, the parties have not met their burden of proving that maintaining it under seal is justified. Therefore, the Court denies the parties' sealing request with respect to the proposed redactions of IMS data in Dkt. No. 138-78, but grants it with respect to the proposed redactions of Bard's own internal market share estimates.

With respect to Dkt. Nos. 132-4, 143-9, and 147-23 (which are all the same document), the only portion relevant to the parties' pending motions is Teleflex's counsel's response to question 5. In that response, the parties and Teleflex seek to redact only the following information: (1) the specific percentage of Teleflex's non-preloaded PICCs that Teleflex estimates are sold for use with another company's stylet, (2) the specific percentage of standalone stylet sales that Teleflex estimates are used with AngioDynamics catheters, and (3) the specific percentage of standalone stylet sales that Teleflex estimates are used with Bard catheters. The Court finds that these limited redactions are narrowly tailored to protect Teleflex's privacy interest in its competitively sensitive, confidential information, and therefore this document may remain under seal to the extent currently proposed by the parties.

### E.   Expert Deposition Transcripts

The parties seek to maintain the parties' "full and excerpted expert deposition transcripts"—found at Dkt. Nos. 143-5, 147-56, 154-5, 132-3, 136-18, 143-3, 144-31, 147-33, 138-8, 144-32, and 147-27—under seal "to the extent they quote the above documents and contain confidential information that falls into all of the above categories, including Teleflex's confidential information." (Dkt. No. 156-1, at 8). The parties may apply narrowly tailored redactions to portions of their expert deposition transcripts that refer to document excerpts that the Court has ruled may be kept under seal, or to other competitively sensitive information that meets the Second Circuit's sealing standard as articulated in *Lugosch*. Given that the Court is granting the parties' and Teleflex's sealing requests with respect to certain documents and denying it with respect to others, the Court declines to evaluate the parties' proposed redactions of their expert deposition transcripts at this time. Rather, the parties and Teleflex should reevaluate those redactions in light of today's ruling and ensure that all proposed redactions are sufficiently limited and narrowly tailored to satisfy the *Lugosch* standard.

### F.   Expert Reports

The parties seek to maintain all of their expert reports—found at Dkt. Nos. 136-3, 147-36, 132-6, 136-62, 138-29, 143-4, 144-33, 136-9, 138-20, 144-3, 147-9, 132-5, 136-5, 138-21, 143-2, 144-39, 147-11, 138-22, 143-6, 144-41, 144-50, 138-25, 147-13, 154-2, 147-43, 136-54, and 147-2—fully under seal "because they heavily quote the above documents and contain confidential information that falls into all of the above categories, including Teleflex's confidential information." (Dkt. No. 15-1, at 9-10). This request is denied. The parties may apply narrowly tailored redactions to portions of their expert reports that refer to document excerpts that the Court has ruled may be kept under seal, or to other competitively sensitive information that meets the Second Circuit's sealing standard as articulated in *Lugosch*. But the parties may

not file their expert reports wholly under seal, given that these reports appear to contain a significant amount of information that cannot meet the *Lugosch* standard, including (but not limited to) the experts' qualifications and backgrounds, general background information about the vascular access industry and the products at issue, analysis that does not rely on the parties' confidential or proprietary information, discussions of record evidence that is publicly filed, and the experts' overall opinions and conclusions that the parties rely on in the pending motions.

Therefore, the Court denies the parties' sealing request with respect to these documents. To the extent the parties wish to renew their sealing motion with respect to these documents, they should propose more narrowly tailored redactions that satisfy the sealing standard as articulated in *Lugosch* and explain the basis for those redactions. *See, e.g.*, *Rensselaer*, 2019 WL 2918026, at *3-5, 2019 U.S. Dist. LEXIS 116674, at *9, 11-12, 15-16.

### G.  Portions of Briefs and Statements of Material Facts

Finally, the parties seek to seal the portions of the parties' summary judgment briefs, (Dkt. Nos. 133-1, 134, 144, 145, 152, and 154), briefs filed in connection with Bard's motion in limine, (Dkt. Nos. 132, 143, and 153), and the parties' statements of material facts, (Dkt. Nos. 133-2, 134-2, 144-1, and 145), "that quote the above documents and contain confidential information that falls into all of the above categories, including Teleflex's confidential information," (Dkt. No. 156-1, at 10). The parties may apply narrowly tailored redactions to portions of these filings that refer to document excerpts that the Court has ruled may be kept under seal, or to other competitively sensitive information that meets the Second Circuit's sealing standard as articulated in *Lugosch*. Given that the Court is granting the parties' and Teleflex's sealing requests with respect to certain documents and denying it with respect to others, the Court declines to evaluate the parties' proposed redactions of their briefing at this time. Rather, the parties and Teleflex should reevaluate those redactions in light of today's ruling

and ensure that all proposed redactions are sufficiently limited and narrowly tailored to satisfy the *Lugosch* standard.

### H.    Personal Identifying Information

The parties also propose to redact certain personal identifying information (specifically, telephone numbers) in Dkt Nos. 138-61, 144-45, 138-76, and 147-26. (Dkt. No. 156-1, at 10 n. 4). This request is granted. *Valassis Comms.*, 2020 WL 2190708, at *4, 2020 U.S. Dist. LEXIS 79448, at *13-14 (finding that "the personal privacy interests of the relevant . . . individuals in information including personal cell phone numbers . . . outweighs the presumption of public access"); *Palomo*, 2018 WL 5113133, at *2, 2018 U.S. Dist. LEXIS 179774, at *4-5 ("[T]he Court authorizes the parties to redact from the public version of the exhibits any undisclosed personally identifying information of third parties, including . . . phone numbers.").

### I.    Discrepancies

As a final matter, when considering the parties' motions, the Court identified several discrepancies in the documents for which they seek sealing orders. For instance, pages 33 to 34 of Dkt. No. 136-6, pages 10 to 11 of Dkt. No. 147-4, and pages 3 to 4 of Dkt. No. 138-26 all contain the same deposition testimony, but the proposed redactions to Dkt. No. 138-26 are narrower than the proposed redactions to Dkt. Nos. 136-6 and 147-4. There may well be more discrepancies like this one, but given the parties' voluminous filings, the Court has not undertaken to compare the parties' submissions in order to make such a determination. In connection with any renewed motion to seal, the parties are instructed to carefully review their filings and propose any necessary modifications to their current redactions in order to ensure that their redactions throughout their filings are consistent and narrowly tailored to protect genuinely competitively sensitive information that has not already been publicly disclosed, through filings in this litigation or otherwise.

IV.     **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that the parties' motion to file under seal (Dkt. No. 156) and Teleflex's uncontested application to maintain its confidential information under seal (Dkt. No. 155) are **GRANTED in part** and **DENIED in part** without prejudice to renewal in accordance with this Decision; and it is further

**ORDERED** that, with respect to the items for which sealing has been denied, the parties may renew their motions to seal no later than March 15, 2021, with supporting affidavits from individuals with personal knowledge setting forth the reasons why any proposed redactions meet the sealing standard as articulated in *Lugosch*; and it is further

**ORDERED** that, on March 16, 2021, the Clerk of Court shall publicly file those items for which sealing has been denied unless covered by the parties' timely renewed motions to seal.

**IT IS SO ORDERED.**

Dated: March 1, 2021
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge